D. D. OIL COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 111638. Promulgated January 11. 1944.

*Dan Moody, Esq.*, for the petitioner.
*Frank B. Schlosser, Esq.*, for the respondent.

OPINION.

STERNHAGEN, *Judge*: In 1939 petitioner sold oil and gas leases to Davis & Co. in consideration of Davis & Co.'s promise to pay petitioner's indebtedness of $60,000 to the Transwestern Oil Co. and to secure the discharge of petitioner's indebtedness of $200,000 to Kellogg. The Transwestern debt of $60,000 was paid by Davis in cash, and there is no dispute about the treatment of that payment as a realization of income by petitioner. Davis also paid Kellogg $100,000 in cash on account of petitioner's debt, and that, too, is recognized as a realization of income by petitioner. The remaining $100,000 of petitioner's indebtedness to Kellogg was covered by a series of promissory notes given in 1939 by Davis & Co. to Kellogg. Of these notes, $33,332 were paid by Davis & Co. when due in 1939, and that amount also is recognized as taxable income of the petitioner in that year.

The remaining $66,668 of notes, which were not due and were not paid by Davis & Co. in 1939, are the subject of the controversy. The petitioner assails the Commissioner's determination that this amount is included in its 1939 income.

The receipt of property in consideration for a sale is regarded as the receipt of cash to the extent of the value of the property (sec. 111

(b), Revenue Act of 1938, *Whitlow* v. *Commissioner*, 82 Fed. (2d) 569: *Helvering* v. *Bruun*, 309 U. S. 461; *Musselman Hub-Brake Co.* v. *Commissioner*, 139 Fed. (2d) 65, and the gain therein is income. So it would be clear, if the Davis notes had come to petitioner directly instead of going to Kellogg on account of petitioner's debt to Kellogg, that petitioner would have been taxable upon the gain when the notes were received; clearer even than if the purchaser had assumed a mortgage. Cf. *Brons Hotels, Inc.*, 34 B. T. A. 376. But the notes did not come to petitioner directly. and its position is that they may not be regarded as constructively received by it in 1939. since petitioner's obligation was not discharged but persisted; and further that, even if petitioner should be charged with constructive receipt of the notes, still there is no income, since the notes were without market value and therefore were not the means of a realization of income.

It is true that petitioner's obligation was not discharged when Kellogg took the Davis notes. The notes were expressly said in the agreement to be "collateral" to the petitioner's obligation. But the legal fiction of constructive receipt treats the receipt by Kellogg as the receipt by petitioner; and clearly the receipt by petitioner directly of the Davis notes in consideration for the sale of the oil and gas leases would be none the less income. even though petitioner's obligation to Kellogg continued. The realization of income from the sale is not found merely in Davis' promise to pay petitioner's debt to Kellogg but in the constructive receipt by petitioner of property consisting of the Davis notes. This property is income to the extent of its value. *Whitlow* v. *Commissioner*, supra; *Helvering* v. *Bruun*, supra.

The face value of the notes was $66.668. They were given under the agreement. and the remaining $33.332 of the $100,000 notes were paid when due in 1939. The $66.668 of notes were paid according to their terms within the following year. at or before their maturity. But petitioner says that in 1939 they were without market value. largely because they were secured by the contract and there was no assurance that the contract would be fulfilled or would be fruitful. This. however, is not enough to indicate that the promissory notes in 1939 were without value. The inference is rather the other way, that they had full value subject to the possibility of a rescission of the contract upon the happening of a condition subsequent. In 1939 there was no reason to treat this as probable. and very soon it turned out not to be a fact. We think the evidence does not establish that the notes were worth less than their face value. The Commissioner's determination that they were worth $66,668 is sustained.

Reviewed by the Court.

*Decision will be entered under Rule 50*

BLACK, *J.*, dissents because he does not believe the facts in this case justify the application of the constructive receipt doctrine so as to tax petitioner with the $66,668 which remained unpaid at the end of the year 1939 on the notes given by Davis & Co. to Kellogg Co.

---

LEECH, *J.*, dissenting: The majority hold that the notes of a face value of $66,668 which were not due and were not paid by Davis in 1939 are taxable income to petitioner in that year at that value. They support this conclusion on the premise that petitioner constructively received these notes in 1939 when given as "collateral" to petitioner's obligation to Kellogg, and that despite this latter condition the petitioner then realized taxable income in the amount of the face value of the notes, on the ground that petitioner has not overcome the presumption of correctness attaching to the respondent's determination that the fair market value of the notes was then equal to their face value.

The doctrine of realization of taxable income by its constructive receipt, of course, is to be sparingly applied. There does not seem to me to be any ground upon which this rule can be applied to petitioner here.

* * * if income has neither actually been received during the taxable year, nor the right to its receipt been definitely fixed during that year as to both the existence of an obligation on the part of the payor and the amount to be paid, such income is properly to be allocated only to that year in which it was in fact received or in which the right to receipt became fixed and liquidated. * * * [*Commissioner* v. *Darnell.* 60 Fed. (2d) 82. 84].

See also *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, and *Franklin County Distilling Co.* v. *Commissioner*, 125 Fed. (2d) 800.

As the majority concede, the notes in controversy were not received by Kellogg, absolutely. They were received by Kellogg, not in payment of but, as collateral to petitioner's obligation. Under such conditional receipt no value represented by the notes could have been used by Kellogg, by their sale or otherwise, to reduce or discharge petitioner's obligation unless and until petitioner defaulted. That use is the only premise upon which to support a finding that petitioner realized taxable income by the constructive receipt of the notes in 1939. But petitioner admittedly did not default on its obligation to Kellogg during that year nor at any other time. Thus any value represented by these notes could not have been used in the taxable year nor was it then ascertainable whether any such value could be used in the future to benefit the petitioner. The basis for holding that petitioner realized anything by constructive receipt of the notes in 1939 therefore falls.

The majority apparently attempt to meet this argument by holding that, in any event, petitioner has failed to prove the notes were worth

less than face value as determined by respondent. This holding, if correct, would dispose of the question but only if the constructive receipt theory were abandoned and the decision premised on actual receipt of the notes by petitioner and its voluntary delivery of them to Kellogg. The record, I think, amply proves that the notes were without fair market value in 1939. I doubt their negotiability. Each of them on its face was subject to the terms of a deed of trust on the properties, executed by Davis, and that deed of trust was expressly made subject to the contract under which Davis & Co. could return the properties and recover the consideration paid therefor, together with interest thereon. And, at the close of 1939, Davis & Co. was seriously considering doing just that. But more important, petitioner did not voluntarily deliver the notes to Kellogg as "collateral" and therefore can not be held to have received them in fact. It can no more be said that petitioner received the notes absolutely than did Kellogg. They were all drawn to Kellogg. They could not have been sold by petitioner. They could have been used by petitioner in no other way than they were used—by the delivery to Kellogg as "collateral" to petitioner's obligation.

I do not think petitioner is taxable as having received the face value of the unpaid notes in 1939. See *Nunnally Investment Co.* v. *United States*, 36 Fed. (2d) 332; affd., 316 U. S. 258; *Dudley T. Humphrey*, 32 B. T. A. 280.