## HUNTER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10776.

Circuit Court of Appeals, Fifth Circuit.

Feb. 18, 1944.

W. W. Spalding, of Washington, D. C., for petitioner.

Helen Goodner, Sewall Key, A. F. Prescott, and Mamie S. Price, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue and Chas. E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The taxpayer received: in 1937, $4,288.-10; in 1938, $28,301.46; and in 1939, $3,-859.29, as her share of option payments made by the Lion Company for the purchase of stock in the Atlas Corporation.[1] As petitioner's stock had a zero base, each of the payments represented a gain, and

---

[1] It was stipulated that on Oct. 26, 1937, petitioner, owning 21,440½ shares, acting with other stockholders, gave Lion Oil & Refining Co. an option to purchase, at $2.-60 per share, 140,000 shares of Atlas Corporation common stock, to be paid in installments, each of which would serve to keep the option in force for a stated time until the whole price was paid. The payments were to be made to an escrow agent with whom the stock was to be deposited, and were to be distributed to the owners of the deposited stock as their money without restriction or obligation except that all amounts received should be applied against the purchase price of the stock if the option should be exercised. There was paid to the escrow agent in 1937, 20¢, in 1938, $1.32, and in 1939, 18¢ per share. The sums collected by the escrow agent were paid over to the depositing stockholders in the year in which they were received, and petitioner returned them as income in those years.

taxpayer returned each in the year she received it, the 1937 payment as 100 percent, taxable, the 1938 and 1939 payments as long term capital gains and 50 percent taxable. The commissioner, treating the payments as "gains attributable to the failure to exercise option to buy property", and, therefore, as short term capital gains under Section 117 of the Revenue Acts of 1936 and 1938, 26 U.S.C.A. Int.Rev.Acts, pages 873, 1061, allocated all of them to the year 1939 and determined a deficiency accordingly.

The Tax Court, citing Virginia Iron, Coal & Coke Co. v. Commissioner, 37 B. T. A. 195, affirmed 4 Cir., 99 F.2d 919, held that the character of the receipts for income tax purposes could not be determined until 1939 when the option lapsed, and that they were, therefore, taxable in that year, and affirmed the commissioner's determination. In doing so, it flatly rejected petitioner's claim that the fact that the basis of the stock in her hands was zero, and, therefore, all the payments received by her would be taxable gain, differentiated this from the cited case.

Pointing out that, unlike in that case she has a zero base for her stock and realized gains as each payment was made to her, petitioner is here invoking Section 42, Revenue Acts of 1936 and 1938,[2] and insisting that since the option monies were received by her under an absolute claim of right and without restriction as to their use, they must, under the statute, be accounted for when received.[3] To the position that that cannot be done, because it cannot be told, until the option has been either completely exercised or has lapsed, whether the income is to be taxed as long term or short term gains, appellant opposes the contention that the statute requires a return of the gains in the years when received and makes them taxable as they then appear to be, that, in short, the method approved by the Tax Court is forbidden by law. With this contention that several separate receipts of income cannot be integrated into one for the purpose of obtaining a clear and final determination of the nature of the income and the taxes to

be imposed on account of it, we cannot at all agree. Under the statute the question for determination here is not one of law but of proper accounting. Such questions under the system which the Congress has set up for their determination are for the Tax Court to determine, and "where no statute or regulation controls, the Tax Court's selection of the course to follow is no more reviewable than any other question of fact", Dobson v. Commissioner, 64 S.Ct. 239, 247. While, therefore, it may not be gainsaid that from the standpoint of proper accounting practices, there is something to be said for the position petitioner takes, that the returns should be made in the years of their receipt, leaving any correction, which later deveolpments make necessary, to amended returns for those years, we think it clear that it was for the Tax Court to determine whether this practice she contends for should prevail, and that its determination to the contrary is not reviewable here. The opinion in Dobson v. Commissioner, supra, contains a thoughtful and reasoned exposition of the place and function of the Tax Court and of this court in the administration of our taxing system. What is said in it with respect to accounting is especially apposite here:

"Whatever latitude exists in resolving questions such as those of proper accounting, treating a series of transactions as one for tax purposes, or treating apparently separate ones as single in their tax consequences, exists in the Tax Court and not in the regular courts; when the court cannot separate the elements of a decision so as to identify a clear-cut mistake of law, the decision of the Tax Court must stand. * * *

"The Government says that 'the principal question in this case turns on the application of the settled principle that the single year is the unit of taxation.' But the Tax Court was aware of this principle and in no way denied it. Whether an apparently integrated transaction shall be broken up into several separate steps and whether what apparently are several steps shall be synthesized into one whole trans-

---

[2] This section reads as follows: "The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41 any such amounts are to be properly accounted for as of a different period." 26 U.S.C.A. Int. Rev.Acts, pages 839, 1027.

[3] Hull v. Commissioner, 4 Cir., 87 F.2d 260; Jacobs v. Hoey, 2 Cir., 136 F.2d 954; North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197.

action is frequently a necessary determination in deciding tax consequences."

The Tax Court having dealt with and settled the accounting problem this case presents in accordance with its established practice, we are bound by its decision. We may not review and reverse it. Its order is

Affirmed.