Charles Goldfarb v. Commissioner.
Goldfarb v. Commissioner
Docket No. 49564.
United States Tax Court
T.C. Memo 1955-254; 1955 Tax Ct. Memo LEXIS 84; 14 T.C.M. (CCH) 1013; T.C.M. (RIA) 55254; September 13, 1955
*84 Where a certain sum is paid to and received by the taxpayer (a corporate officer) as salary, it is taxable to him as salary despite an attempt by the owners of the corporation's stock subsequently to convert the payment into a loan from the corporation to such officer. Henry Cassorte Smith, Esq., 15 Broad Street, New York, N. Y., for the petitioner. S. Jarvin Levison, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined a deficiency of $4,269.77 in petitioner's income tax liability for the calendar year 1947. In his petition the taxpayer raised four issues, one of which was abandoned before the hearing. At the hearing petitioner stated three issues, one of which relating to a *85 contribution to a charitable foundation, was later conceded by respondent in his brief. Thus there remain two issues: - (1) The inclusion in income of petitioner of $5,000 which was paid to him as salary in and for 1947 but as to which he claims subsequent actions converted the same into a loan from the corporation; (2) The disallowance of $1,000, being part of a deduction claimed by petitioner on account of unreimbursed expenses of entertainment. [Findings of Fact] The parties filed a stipulation of facts in which most of the facts are stated substantially in the following form: "1. The petitioner, Charles Goldfarb (hereinafter called 'the taxpayer'), during the calendar years 1947, 1948 and 1949, was an officer and stockholder of Reich-Goldfarb & Co., Inc., a corporation organized under the laws of the State of New York on January 23, 1946 which commenced actual business operations on or about May 1, 1946. "2. Reich-Goldfarb & Co., Inc., throughout the period mentioned in paragraph 1 was on the accrual basis of accounting with a fiscal year ending February 28. "3. During the years mentioned in paragraph 1, Murray Lerner, Irving Reich, and the petitioner were the *86 sole officers, directors, and stockholders of Reich-Goldfarb & Co., Inc., each owning one-third of the corporation's stock. "4. During its fiscal year ending February 28, 1947, Reich-Goldfarb & Co., Inc., paid to its officers a total of $65,475. of which amount the petitioner received $9,375. in the calendar year 1947. The petitioner for the year 1947 was on a calendar year and cash receipts and disbursements basis of accounting. "5. Reich-Goldfarb & Co., Inc., during its fiscal year ending February 28, 1948, paid to its officers a total of $58,500. of which amount the petitioner received $16,125. during the calendar year 1947 and $3,375. in the calendar year 1948. "6. On December 22, 1947 the petitioner, Murray Lerner, and Irving Reich each signed a memorandum reading as follows: 'Due to conditions in our business we, the undersigned, have decided to redeposit the sum of (5,000.00) Five Thousand Dollars each, and same is to be credited to our salary account for the year.' "7. On or about February 10, 1948, the following journal entry was made on the books of account of Reich-Goldfarb & Co., Inc.: 'DR Loans to Officers
$15,000.00
CR Officers Salaries
$15,000.00
*87 To adjust salary account.' "The above debit entry of $15,000. was posted to the General Ledger and listed as a loan receivable from each of the three officers in the amount of $5,000. "8. The Ledger of Reich-Goldfarb & Co., Inc., shows that petitioner made the following payments to said corporation in cash at the times mentioned: "August, 1948
$ 500.00
September, 1948
500.00
October, 1948
500.00
December, 1948
2,500.00
January, 1949
1,000.00
Total
$5,000.00
"9. Neither the petitioner nor Murray Lerner and Irving Reich signed and delivered to Reich-Goldfarb & Co., Inc., a promissory note or notes evidencing their respective indebtedness to that corporation. "10. In his income tax return for the calendar year 1947 the petitioner reported his total income from salaries as $20,500., which was computed as follows: "Amount received in the
calendar year 1947 and
claimed as salary by Reich-
Goldfarb & Co., Inc. in its
fiscal year ended February 28,
1947
$ 9,375.00
Amount received
in the calendar year
1947 as designated
above
$16,125.00
less the adjustment
of
5,000.00
which was transferred to the
loan account or a net of
11,125.00
Total salaries received and
reported by the petitioner
$20,500.00
*88 "11. Reich-Goldfarb & Co., Inc., filed income tax returns for the fiscal years ending February 28, 1947 and February 28, 1948. In its return for the fiscal year ending February 28, 1947 said corporation claimed as a deduction Officers' Salaries in a total amount of $65,475. In its return for the fiscal year ending February 28, 1948 it claimed as a deduction for Officers' Salaries a total amount of $43,500. computed as follows: "Total amount paid during
its fiscal year
$58,500.00
Less adjustment for trans-
fer to Loans Receivable
from officers
15,000.00
Net amount paid and
claimed as a deduction
$43,500.00"
The certificate of incorporation of the corporation enumerated many powers conferred on it but does not expressly authorize the corporation to loan money. "13. The Minute Book of Reich-Goldfarb & Co., Inc., contains no minutes of stockholders' or Board of Directors' meetings after August 1, 1946 although said corporation is still in existence." Under the above facts and those adduced by oral testimony, petitioner claims that the sum of $5,000 received by petitioner in the calendar year 1947 from the corporation did not constitute additional salary *89 or compensation to him under section 22(a), I.R.C. (1939) but was a loan from the corporation pursuant to an agreement entered into subsequent to payment but before the end of the year 1947. He also contends that respondent improperly disallowed unreimbursed expenses of entertainment incurred during 1947 in the amount of $1,000. [Opinion] As to the first issue, it appears that petitioner was paid as salary the sum of $25,500 during 1947 in the ordinary course of corporate operation. Petitioner received the payment under a claim of right. He kept it within his control throughout the entire year 1947. He executed no note or other evidence of indebtedness and he paid no interest at any time. There was no setting apart on the books of the corporation in petitioner's taxable year 1947 of the sum of $5,000 referred to in the memorandum of December 22, 1947. Petitioner kept control and possession until August, 1948, when he made the first payment in the amount of $500 to the corporation. Although the evidence lacks precision, it would seem that when the payments were made to the corporation in 1948 and 1949, such payments were much more in the character of contributions to capital. *90 The memorandum of December 22, 1947, is premised on the statement "due to conditions in our business". It does not specify what the conditions were nor does it give any specific reason for the transaction. There were no minutes of the corporation bearing on the alleged loan. Moreover, such evidence as we have does not support the contention that the corporation was in financial distress. Its cash position was much better at the end of the fiscal year 1947 than at the beginning, cash being estimated at $44,000 at the start and $120,000 at the end of the year. Furthermore, if the transaction did constitute a loan as contended by petitioner, petitioner being on a cash basis, the loan, as to him, occurred in 1948 and 1949 when the payments were made. On the evidence of record, we hold that petitioner has not proved respondent to be in error in taxing the sum of $5,000 as income in 1947 when paid to and received by petitioner. North American Oil Consolidated v. Burnet, 286 U.S. 417. As to the issue arising from unreimbursed entertainment expenses, there is very little evidence before us. Petitioner estimated that he spent from $40 to $50 per night or $50 to $60 per week *91 for business expenses, but there is no evidence as to the number of such nights or weeks in which he incurred expenses. The record contains no canceled checks or bills or other evidence of a tangible character. Petitioner testified that he thought, but was uncertain about the fact, that he made a trip to St. Louis and one to California during 1947. However, he testified that the corporation paid all expenses incurred on trips outside the New York area. Thus, petitioner would have been reimbursed by the corporation for the cost of such trips, if any were made. Realizing the paucity and character of the proof, petitioner asks a "Cohan decision" ( Cohan v. Commissioner, 39 Fed. (2d) 540). The fact of the matter is that respondent in the examination of petitioner's return found some merit in petitioner's claim for alleged expenses and gave petitioner a "Cohan decision". He allowed $1,116, and disallowed $1,000 of the alleged expenses "on the ground that it has not been substantiated." For the same reason, we are unable to find that petitioner has established his claim for a larger amount. We have no basis in fact for disturbing the Commissioner's allowance on this item. *92 Decision will be entered under Rule 50.